1  STEPHANIE M. HINDS (CABN 149604)
   Acting United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  JONATHAN U. LEE (CABN 148792)
   Assistant United States Attorney
5
       1301 Clay Street, Suite 340S
6      Oakland, California 94612
       Telephone: (510) 637-3680
7      FAX: (510) 637-3724
       Jonathan.Lee@usdoj.gov
8
   Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 13-398 YGR |
| Plaintiff, | **UNITED STATES' PRE-HEARING REPLY BRIEF** |
| v. | |
| CHRISTOPHER SHAW, | Evidentiary Hearing: |
| Defendant. | Date: April 5, 2021<br>Time: 8:30 a.m. |

## I. INTRODUCTION

By order dated March 5, 2021, the Court set a briefing schedule that included provision for the parties to file an optional reply brief. Dkt. 155. The United States respectfully submits this reply brief.

This brief responds to the defendant's opening brief, in which he argued that as a matter of due process, he must be able to confront the complaining witness, here identified as Victim 1, at the evidentiary hearing, and it updates the Court about a recently-discovered phone call between defendant and Victim 1 on February 24, 2021.

In this phone call, which was arranged by a third party while defendant was held at Santa Rita Jail, defendant told Victim 1 to tell this Court that she made up her previous statements because she was mad at defendant and further that if she did so, defendant would have to be released. Defendant also assured Victim 1 that she would not be held in custody for providing the testimony he requested. This phone call and the defendant's written threats against Victim 1 in September 2020 warrant a finding by this Court that it will receive the hearsay testimony of Victim 1's statements to law enforcement.

## II. STATEMENT OF RELEVANT FACTS

Following his arrest on October 7, 2020 in Oakland, California, defendant Christopher Shaw appeared for a status conference before this Court on October 28, 2020. Dkt. 130.

After a change in defense counsel in January 2021, the parties appeared for a status conference on February 1, 2021. Dkt. 141. At that status conference, the parties discussed with the Court dates for a revocation hearing. Defendant raised whether a complaining witness, identified here as Victim 1, would testify at the hearing and whether the witness could testify by Zoom from a remote location. The government responded by informing the Court of its discussions with prior defense counsel that because of threats by defendant against the complaining witness, a decision regarding that witness' testimony would be deferred to a point closer to the hearing. The Court set the revocation hearing for March 15-16, 2021. Dkt. 142-143.

On February 12, 2021, the Court held a further status conference to discuss logistics and confirming the hearing as a full-day, in-person hearing for March 15, 2021. Dkt. 147. The defense again raised the subject of live witness testimony at this conference. The government responded

consistent with its previously stated position.

On March 4, 2021, defense counsel requested a status hearing before the Court, which the Court set for March 5, 2021. Dkt. 154-55. Defendant raised once again the testimony of Victim 1 and requested that the Court order the government to notify the defense of any proceedings in this district concerning that particular witness. The government responded by reasserting its concerns regarding the defendant's threats against the complaining witness and its position that any decision regarding that witness' testimony would be deferred to a point closer to the hearing.

After the filing of its prehearing brief on March 15, 2021, the government became aware of a recorded phone conversation between the defendant and Victim 1. The audio recording of this conversation is marked as hearing exhibit 31. The phone conversation occurred on February 24, 2021. In the recording, defendant speaks to Victim 1 with the assistance of an associate, who connects the two in a three-way call. After Victim 1 asks defendant what she should do, in a reference to her expected testimony in this proceeding, defendant indicates that the call is recorded, and he cannot tell her what to say. He then informs Victim 1 she should say she was "mad" at him and made up her previous statements. Hearing Exh. 31 at 4:50-5:00. Defendant later makes the statement that if Victim 1 testifies as he directed, the government will have to "drop" the case and "let me go." *Id*. at 5:38. At another point, defendant assures Victim 1 that she will not have to "do time." *Id*. 5:55.

**III.      DISCUSSION**

     **A.      The Parties Agree on the Evidentiary Standards Applicable to the Hearing.**

Both parties' initial pre-hearing briefs concur on the evidentiary standards that provide the framework for the admission of evidence at the hearing.

First, the Federal Rules of Evidence do not apply. *United States v. Verduzco*, 330 F.3d 1182, 1185 (9th Cir. 2003) ("[T]he Federal Rules of Evidence do not apply to supervised release revocation hearings." ); *United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005); *United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997); Federal Rule of Evidence 1101(d)(3).

Second, when applicable, the Court weighs a defendant's interest in his right to confrontation against the government's good cause for denying it. *United States v. Comito*, 177 F.3d at 1170. As

stated in *Walker*:

> The defendant's right to confrontation is weighed under the specific circumstances presented. In conducting the balancing test, the trial court may consider the importance of the evidence to the court's finding, the releasee's opportunity to refute the evidence, and the consequences of the court's finding. The trial court might also consider the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence.

117 F.3d 417 at 420. Moreover, in *Hall*, the Ninth Circuit held that right to confront testimonial witnesses set forth in *Crawford v. Washington*, 541 U.S. 36 (2004) does not apply to proceedings involving the revocation of supervised release. 419 F.3d at 985-86.

It is in the application of these principles that the parties differ.

**B.      Under *Comito*, the Good Cause for Denying Confrontation of Victim 1 Outweighs Defendant's Interest**

During the pendency of these proceedings, the defendant's position has sought to cross-examine Victim 1. He objects to admission of testimony about Victim 1's statements from any law enforcement officer, on the basis that it would violate his due process right to confront witnesses against him. *See Morrissey v. Brewer,* 408 U.S. 471, 489 (1972); *United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005); Fed. R. Crim. Pro. 32.1(b)(2)(C). In his pretrial brief, defendant states that Victim 1 "absolutely must testify." Dkt. 156 at 2.

The government disagrees with the defense position.

**1.      Defendant's statements in the phone call with Victim 1, coupled with his earlier threats, diminish his confrontation interest at this hearing.**

During the past two months, defendant argued in this Court that Victim 1 should be forced to testify in person or by Zoom. In the February 24, 2021 phone call, defendant took matters into his own hands. He had an associate connect him to Victim 1 by phone. In that conversation, defendant explained what Victim 1 needed to do, namely that she should tell this Court that she made up her earlier statements about defendant's conduct because she was mad at him. He further explained the mutual benefits to them both, namely that he would be released from custody and Victim 1 would not be

PRE-HEARING REPLY BRIEF
CR 13-398 YGR                                                  3

detained.  Defendant can also be heard in the phone call assuring Victim 1 that those who would seek to obtain Victim 1's testimony against the defendant would tell her lies in the process.

The February 24, 2021 phone call, alone, supports a finding by the Court that it will receive the hearsay testimony at the upcoming evidentiary hearing.  However, as concerning as the February 24, 2021 phone call is, the full context is even worse.  The February 24, 2021 phone call occurred in the context of defendant's threats against Victim 1 dating to September 2020.  The government provided the threatening texts to the defense in February and identified them as hearing exhibits 9-13, 14.  These texts form a menacing backdrop to the February 24, 2021 phone call.

In light of the foregoing evidence, this Court should follow the reasoning of the Second Circuit in *United States v. Carthen*, 681 F.3d 94, 101 (2d Cir. 2012), which affirmed the district court's decision to admit a domestic violence victim's hearsay statement in a supervised release hearing, stating "[t]he defendant's interest is entitled to little weight if the defendant caused the declarant's absence by way of intimidation." *Id*.  The defendant's confrontation interest here is significantly undercut by his own conduct in the February 24, 2021 phone call and his September 2020 text messages.

**2. Defendant's confrontation interest is also diminished because his texts independently corroborate the Form 12's allegations.**

Defendant's pre-hearing brief overstates Victim 1's centrality at the upcoming hearing in an effort to tip the *Comito* balancing test.  The argument is overstated because defendant's text messages corroborate the Form 12's allegations.  The text messages are admissible as non-hearsay under Federal Rule of Evidence 801(d)(2).

In those texts, defendant issued various threats to Victim 1.  He stated he would "hurt" or "kill" her.  He stated he has been busy "pimpin to keep the money coming in" to provide for Victim 1 and others.  He stated that she can go to the police or "choose up" – a reference to selection of a new pimping relationship – but he will "find" her.  He stated that no one can "stop" him.

Defendant's text messages stand alone as corroboration of his offenses, and their existence further cuts against his request to exclude the hearsay testimony of Victim 1's statements.

### 3. The Good Cause Showing Here Is Exceptionally Strong.

The evidence here is unusual in its strength and reliability. In his own words, defendant threatened Victim 1 in September 2020. There are several threats and they are noteworthy for their specificity about possible adverse consequences. Later, in the days preceding this hearing, defendant spoke directly to Victim 1 by phone on February 24, 2021, and told her how to testify. He explained what she should say under oath, how it would benefit him, and why it would not penalize her. He also told Victim 1 that she would hear lies from those who would have her testify against him. Defendant's statements both endangered Victim 1 and sought to undermine these proceedings. As a result, the Court should find that the good cause for receiving the hearsay testimony is exceptionally strong and outweighs defendant's confrontation interests.

## IV. CONCLUSION

For the foregoing reasons, the United States requests that the Court receive the hearsay statements of Victim 1 from the law enforcement witnesses.

DATED: March 24, 2021

STEPHANIE M. HINDS
Acting United States Attorney

/s/
JONATHAN U. LEE
Assistant United States Attorney
Attorney for the UNITED STATES OF AMERICA